UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SCOTTIE MCFARLAND, )
 )
      Plaintiff, )
 )
v. ) No. 4:20-CV-00011-JRG-CHS
 )
SHERIFF TIM G. FULLER, SGT. T.J. )
PARSONS, C/O TYLER, SGT. PHILLIP )
OWENS, 1st JOHN DOE a/k/a "TINY," 2nd )
JOHN DOE FROM WINCHESTER )
POLICE DEPARTMENT, and KENNETH )
JACOB BEAN, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This is a pro se prisoner's complaint for violation of civil rights filed pursuant to 42 U.S.C. § 1983 that the United States District Court for the Middle District of Tennessee transferred to this Court after granting Plaintiff leave to proceed *in forma pauperis* [Doc. 4]. The matter is now before the Court for screening of the complaint pursuant to the Prison Litigation Reform Act ("PLRA").

### I.    SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review

under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983.

## I. ALLEGATIONS OF THE COMPLAINT

On August 9, 2019, Plaintiff, an African American, was a pretrial detainee housed in D-Block of the Franklin County Jail with a state inmate known to be affiliated with the "Crazy White Boy Gang," Defendant Inmate Kenneth Bean [Doc. 1 at 2, 5, 9–10; Doc. 1-1]. Defendant Sheriff Fuller "chose to house" Plaintiff with Defendant Inmate Bean even though he "is very much aware of all prisoners housed in the jail, especially a state prisoner who is a known white supremacist" [*Id.* at 9–10].

On this same day, Defendant Inmate Bean taunted Plaintiff, took one of Plaintiff's letters, pretended the letter was toilet paper, and wiped his behind with it [*Id.* at 5]. Plaintiff was frightened and spoke to Defendant Officer Tyler about this behavior, but Defendant Tyler laughed, and Plaintiff therefore told Defendant Inmate Bean to leave him alone [*Id.*]. Defendant Inmate Bean

2

then began calling Plaintiff a "snitch n[*****]"and walking through the pod while ranting and beating on tables [*Id.*].

At this point, Plaintiff requested to speak to the night shift supervisor, Defendant Sgt. Owens [*Id.*]. Defendant Officer Tyler initially denied this request, but ultimately called Defendant Sgt. Owens to the pod after observing Defendant Bean's behavior [*Id.*].

When Defendant Sgt. Owens came to the pod, Plaintiff explained Defendant Inmate Bean's behavior to both Defendant Officer Tyler and Defendant Sgt. Bean and requested help [*Id.* at 5–6]. Plaintiff specifically told Defendant Sgt. Owens that Defendant Inmate Bean was threatening him, had pretended Plaintiff's letter was toilet paper, and should not be allowed to treat Plaintiff in this manner, as they both knew that Defendant Inmate Bean was a white supremacist, and stated that as a pretrial detainee he should not be housed with a state inmate [*Id.* at 6]. Defendant Sgt. Owens responded "'[w]ell you know what kind of white people are in this jail,'" which Plaintiff asserts was a reference to the fact that white people in the Franklin County Jail are racist [*Id.* n.1].

Plaintiff remained in the pod with Defendant Inmate Bean, who continued ranting and making racist and threatening statements to Plaintiff [*Id.*]. Plaintiff eventually began beating on the pod door, at which point Defendant Inmate Bean attacked him, beat his face "profusely," and rammed Plaintiff into the wall four or five times [*Id.*]. After the attack, Defendant Inmate Bean continued to threaten Plaintiff and Plaintiff's family and ran around the pod making racist statements, and no jail officials helped Plaintiff [*Id.*]. Moreover, despite Plaintiff asking Defendant Sgt. Owens if he could go to the infirmary "considering that he has had quadruple bypass surgery" after the attack when he was visibly bruised and bleeding, Plaintiff did not receive any medical treatment or medication for pain [*Id.* at 6, 14].

3

Plaintiff went to "pill call" the next morning and told Defendant John Doe a/k/a "Tiny" what had happened [*Id.* at 6]. This Defendant asked Plaintiff if he wanted to press charges against Defendant Inmate Bean, to which Plaintiff responded "[y]es" [*Id.* at 6–7]. When Plaintiff returned to his pod after this conversation, Defendant Inmate Bean was no longer there [*Id.*].

Plaintiff filed a complaint about and reported Defendant Inmate Bean's attack on him to numerous jail officials, including Defendants Sgt. Parsons, Officer Tyler, Sgt. Owens, John Doe a/k/a "Tiny," and John Doe Officer of the Winchester County [*Id.*]. Plaintiff also told these jail official Defendants that he wanted to press charges against Defendant Inmate Bean for the threats and assault and continued to request medical care due to the attack, as he had passed out twice and had visible bruising on his head, face, and arms [*Id.*]. Plaintiff eventually signed forms to press charges while with Defendant John Doe a/k/a "Tiny," but did not receive medical treatment [*Id.*].

Subsequently, on August 23, 2019, Plaintiff was placed in a transfer van with Defendant Inmate Bean [*Id.*]. Plaintiff explained his history with Defendant Inmate Bean to Defendant Sgt. Parsons, who told Plaintiff to "learn his place," at which time Defendant Inmate Bean spit on Plaintiff [*Id.*]. Defendant Inmate Bean was then separated from Plaintiff and restrained [*Id.*].

No jail officials have taken any action against Defendant Inmate Bean since Plaintiff left the jail despite Plaintiff mailing Defendant Sheriff Fuller a letter stating that he wanted to press charges against Defendant Inmate Bean and wanted an investigation of the incident [*Id.*].

## II. ANALYSIS

### A. Inmate Bean

First, nothing in the complaint allows the Court to plausibly infer that Defendant Inmate Bean was acting under color of state law at any relevant time. Thus, the complaint fails to state a claim upon which relief may be granted under § 1983 as to him and he will be **DISMISSED**.

4

### B. Failure to Protect

Next, as set forth above, Plaintiff alleges that although he told Defendants Officer Tyler and Sgt. Owens about Inmate Bean's behavior and told Defendant Sgt. Owens that Inmate Bean was a white supremacist and Defendant Officer Tyler witnessed some of Inmate Bean's behavior, these Defendants failed to protect him from this inmate. Plaintiff also alleges that Defendant Sheriff Fuller "chose to house" Plaintiff, an African American, with Inmate Bean, a known white supremacist gang member, even though Defendant Sheriff Fuller is especially aware of known white supremacist state prisoners in the jail. Plaintiff also generally alleges that as a pretrial detainee, he should not have been housed with Inmate Bean, a state prisoner, because counties are not liable for the acts of such prisoners and "the [S]tate of Tennessee" realized that housing pretrial detainees with sentenced inmates is dangerous [*Id.* at 9].

### i. Applicable Law

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This includes the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). Thus, prison officials must "to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

A defendant violates this right by being deliberately indifferent to a risk of injury to a prisoner. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). An officer is deliberately indifferent to such a risk where he is "subjectively aware of the risk" and "disregard[s] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

5

However, prisoners cannot recover for emotional or mental injury resulting from a failure to protect absent a prior physical injury that is greater than *de minimis*. 42 U.S.C. § 1997e(e) (providing that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Wilson v. Yaklich*, 148 F.3d 598, 600–01 (6th Cir. 1998) (providing that claims seeking monetary damages for failure to protect in violation of the Eighth Amendment fail absent a physical injury that is more than *de minimis*).

### ii. Analysis

#### a. Housing Pretrial Detainee with State Inmate

First, as to Plaintiff's claim against Defendant Sheriff Fuller for failure to protect arising out of the fact that this Defendant housed Plaintiff, a pretrial detainee, with a post-trial state inmate, "the overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates." *Burciaga v. Cty. of Lenawee*, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000) (collecting cases). Plaintiff's conclusory allegation that the State of Tennessee realized that it is "dangerous" to house pretrial detainees with state prisoners does not allow the Court to plausibly infer that any named Defendant intended to punish Plaintiff or was deliberately indifferent to a substantial risk to Plaintiff's safety by housing him with a state inmate and it therefore fails to assert a constitutional violation.

#### b. White Supremacist Gang Member

On the other hand, Plaintiff's allegations that Defendants Officer Tyler, Sgt. Owens, and Sheriff Fuller housed Plaintiff, an African-American, with Inmate Bean, a known white supremacist gang member, allow the Court to plausibly infer that these Defendants knew of and

6

Case 4:20-cv-00011-JRG-CHS   Document 7   Filed 05/05/20   Page 6 of 11   PageID #: 9

disregarded a substantial risk of serious harm to Plaintiff. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (holding that where defendants knew of a guard's history of discrimination and violence, a jury should determine whether the act of continuing to employ that guard could support the plaintiff's claim for failure to protect). Accordingly, this claim will proceed.

### c. Transport Van

However, Plaintiff's claim that Defendant Sgt. Parsons failed to protect Plaintiff from Inmate Bean arising out of an incident in which Plaintiff and Inmate Bean were both placed in the same transportation van two weeks after Inmate Bean attacked Plaintiff fails to state a claim upon which relief may be granted for failure to protect under § 1983. Specifically, while Plaintiff alleges that this placement resulted in Inmate Bean spitting on him, spitting does not cause a physical injury that is more than *de minimis*. *See*, *e.g.*, *Barnes v. Daviess Cty. Det. Ctr.*, No. 4:18-CV-P91-JHM, 2018 WL 4997054, at *3 (W.D. Ky. Oct. 15, 2018) (citation omitted). Thus, Plaintiff cannot recover monetary damages for this incident. *Yaklich*, 148 F.3d at 600–01. Moreover, as nothing in the complaint suggests any continuing threat to Plaintiff from this incident, Plaintiff is not entitled to injunctive relief for this claim. *Id.* at 601. Thus, these allegations fail to state a claim upon which relief may be granted under § 1983 and will be **DISMISSED**.

### C. Failure to Train

Plaintiff also claims that Defendant Sheriff Fuller's failure to train officers in the jail to properly manage interactions between racially diverse inmates and known white supremacist inmates was a moving force behind the attack on him by Inmate Bean. As these allegations allow the Court to plausibly infer a violation of § 1983, this claim will also proceed. *Plinton v. Cty. of Summit,* 540 F.3d 459, 464 (6th Cir. 2008) (setting forth the elements of a claim for failure to train in violation of § 1983). However, such claims are properly construed as against the relevant

7

municipality, rather than individuals. *Harvey v. Campbell Cty.*, 453 F. App'x. 557, 563 (6th Cir. 2011) (citations omitted). Thus, the Clerk will be **DIRECTED** to update the Court's docket sheet to add Franklin County as a Defendant and this claim will proceed against this Defendant.

### D. Deliberate Indifference to Medical Needs

Plaintiff states that he asked Defendant Sgt. Owens if he could go to the infirmary due to his history of having quadruple bypass surgery after the attack on him by Inmate Bean, but never received any medical treatment even though his head and body were bleeding and had visible bruising. Plaintiff also generally alleges that he "continued to request [] medical treatment" from jail officials including Defendants Sgt. Parsons, Officer Tyler, Sgt. Owens, John Doe a/k/a "Tiny," and John Doe Officer of the Winchester County after the attack and never received it despite having visible bruising on his head, face, and arms and the fact that he had passed out twice.

### i. Applicable Law

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–5. Establishing the deprivation of a federal right in the Eighth Amendment medical context requires evidence that that acts or omissions of an individual operating under the color of state law were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Thus, "[a] constitutional claim for denial of medical care has [both] objective and subjective components." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires proof that the inmate is suffering from a sufficiently serious medical need such that "he [was] incarcerated under conditions posing a substantial risk of

8

Case 4:20-cv-00011-JRG-CHS   Document 7   Filed 05/05/20   Page 8 of 11   PageID #: 11

serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) a condition diagnosed by a physician. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).

The subjective component requires proof that the prison official acted with deliberate indifference. *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009). Deliberate indifference is more than mere negligence and requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). To meet this subjective standard, the defendant must have: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "draw[n] the inference;" and (3) "then disregarded that risk." *Id.* at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

### ii. Analysis

Plaintiff's allegation that Defendant Sgt. Parsons did not assist him in obtaining medical treatment even though he told this Defendant that he had a history of quadruple bypass heart surgery and his head and body were bleeding and bruised after Inmate Bean's recent attack on him allow the Court to plausibly infer that Defendant Sgt. Parsons disregarded a substantial risk to Plaintiff. Accordingly, this claim will proceed against Defendant Sgt. Parsons.

However, Plaintiff's allegation that he "continued to request [] medical treatment" from other Defendants in the days after the attack but did not receive it even though he had visible bruising on his head, face, and arms and had passed out twice is insufficient to allow the Court to plausibly infer a constitutional violation. Specifically, even if the Court assumes that Plaintiff had a serious medical issue at the time of these requests, nothing in the complaint suggests that these

Defendants actually perceived and disregarded a substantial risk to Plaintiff from any such medical need. The mere existence of some bruising on Plaintiff after a fight would not suggest that Plaintiff was at substantial risk of harm without medical treatment. Moreover, Plaintiff does not set forth facts from which the Court can plausibly infer that any of these Defendants knew of his pertinent health history or that he had passed out twice at some unidentified time during or after the attack. Thus, these allegations fail to state a plausible claim for violation of the Eighth Amendment for which relief may be granted under § 1983.

### E. Charges Against Inmate Bean

Plaintiff's remaining claim is that all Defendants did not follow through on his requests to press charges against Inmate Bean. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Accordingly, this allegation fails to assert a constitutional violation.

### III.  CONCLUSION

For the reasons set forth above:

1. The Clerk is **DIRECTED** to add Franklin County as a Defendant in this matter;

2. This action will proceed only as to Plaintiff's claims that (1) Defendants Sheriff Fuller, Officer Tyler, and Sgt. Owens failed to protect him from a substantial risk of serious harm posed by Inmate Bean due to him being a known white supremacist gang member; (2) Defendant Franklin County failed to properly train its officers to handle conflicts between racially diverse inmates and known white supremacist inmates; and (3) Defendant Sgt. Parsons was deliberate to Plaintiff serious medical needs in denying Plaintiff's request to go to the infirmary after Inmate Bean attacked him;

3. All other claims in the complaint are **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983 and Defendant Inmate Bean and the Doe Defendants are therefore **DISMISSED**;

4. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for the remaining Defendants. Plaintiff is **ORDERED** to complete the service packets and return it to the Clerk's Office within twenty (20) days of receipt of

this order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4;

5. Service shall be made on Defendants pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

6. Plaintiff is forewarned that if he does not return the completed service packets within the time required, the Court may dismiss this action;

7. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

8. Plaintiff is also **NOTIFIED** that if he fails to timely comply with this order, this action will be dismissed for failure to prosecute and to follow the orders of this Court; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

11

Case 4:20-cv-00011-JRG-CHS   Document 7   Filed 05/05/20   Page 11 of 11   PageID #: 14