| | | |
|---|---|---|
| SCOTTIE MCFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-00011-JRG-CHS |
| | ) | |
| SHERIFF TIM G. FULLER, SGT. T.J. | ) | |
| PARSONS,[1] C/O TYLER MILLIKEN,[2] | ) | |
| SGT. PHILLIP OWENS, and FRANKLIN | ) | |
| COUNTY, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is a prisoner's pro se complaint for violation of 42 U.S.C. § 1983 arising out of an attack on Plaintiff by another inmate on August 9, 2019, while Plaintiff was a pretrial detainee in the Franklin County Jail [Doc. 1 at 5–8]. Specifically, this action is proceeding as to Plaintiff's claims that (1) Defendants Sheriff Fuller, Officer Tyler Milliken, and Sgt. Owens failed to protect him from a substantial risk of serious harm that Kenneth Bean ("Inmate Bean") posed to Plaintiff due to Inmate Bean being a known white supremacist gang member; (2) Defendant Franklin County failed to properly train its officers to handle conflicts between racially diverse inmates and known white supremacist inmates; and (3) Defendant Sgt. Owens was deliberately indifferent to Plaintiff's serious medical needs in denying his request to go to the infirmary after Inmate Bean attacked him [Doc. 7 at 10; Doc. 61 at 3].

---

[1] In its order screening Plaintiff's complaint, the Court mistakenly allowed Plaintiff's claim for denial of medical care against Defendant Owens to proceed against Defendant Parsons, despite dismissing the claims Plaintiff actually brought against Defendant Parsons [Doc. 7 at 7, 9–10; Doc. 61]. As such, for the reasons the Court set forth in its original screening order and its order correcting the screening order [Doc. 7; Doc. 61], Defendant Parsons will be **DISMISSED**.

[2] As Defendants' answer establishes that the individual that Plaintiff named as "Officer Tyler" in his complaint is Officer Tyler Milliken [Doc. 26 at 1], the Clerk will be **DIRECTED** to update his name on the Court's docket and the Court will refer to him as such.

Now before the Court is Defendants' second motion for summary judgment [Doc. 63[3]], in which they rely on affidavits and exhibits [Docs. 49, 50, 50-1, 50-2, 50-3, 51, 52, 53, 54-1, 63-1], a memorandum [Doc. 64], and a statement of material facts [Doc. 65]. Plaintiff did not timely respond to this dispositive motion, and he therefore waived any opposition to it. E.D. Tenn. LR 7.1 and 7.2; *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978). For the reasons set forth below, this motion [Doc. 63] will be **GRANTED** and this action will be **DISMISSED with prejudice**.

I.  STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). However, "when videotape footage exists, the reviewing court need not credit the version of a party who asserts facts 'blatantly contradicted by the videotape; rather it should view the facts in the light depicted by the videotape.'" *Cunningham v. Shelby Cty.*, 994 F.3d 761, 763 (6th Cir. 2021).

---

[3] The Court denied Defendants' first motion for summary judgment without prejudice and allowed them to file a second one by October 26, 2021 [Doc. 61], which they did [Doc. 63]. Accordingly, Defendants' motion for extension of time to file a motion for summary judgment [Doc. 62] will be **DENIED as moot**.
  Moreover, while the Court noted in its previous order that Defendants had filed proof suggesting Plaintiff failed to file a grievance regarding his claims despite the Franklin County Jail having a grievance procedure [Doc. 61 at 2], upon closer review of the record, Defendants have not set forth proof that the Franklin County Jail had a grievance policy during the time period relevant to Plaintiff's complaint [Doc. 50 at 2–3; Doc. 50-4; Doc. 50-5], such that the Court could determine that Plaintiff's failure to file a grievance regarding his claims prior to filing this action bars it from considering those claims. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). As such, the Court cannot grant summary judgment on this ground.

To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010). However, a district court cannot grant summary judgment in favor of a movant simply because the adverse party did not respond. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court must, at a minimum, examine the motion to ensure that the movant has met its burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## II. PLAINTIFF'S EVIDENCE

The Court previously summarized the relevant allegations of Plaintiff's sworn complaint, which the Court treats as an affidavit for purposes of summary judgment, *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a sworn complaint carries the same weight as an affidavit for purposes of summary judgment), as follows:

> On August 9, 2019, Plaintiff, an African American, was a pretrial detainee housed in D-Block of the Franklin County Jail with a state inmate known to be affiliated with the "Crazy White Boy Gang," [] Inmate Kenneth Bean [Doc. 1 at 2, 5, 9–10; Doc. 1-1]. Defendant Sheriff Fuller "chose to house" Plaintiff with [] Inmate Bean even though he "is very much aware of all prisoners housed in the jail, especially a state prisoner who is a known white supremacist" [*Id.* at 9–10].

3

> On this same day, [] Inmate Bean taunted Plaintiff, took one of Plaintiff's letters, pretended the letter was toilet paper, and wiped his behind with it [*Id.* at 5]. Plaintiff was frightened and spoke to Defendant Officer Tyler about this behavior, but Defendant [Officer] Tyler laughed, and Plaintiff therefore told [] Inmate Bean to leave him alone [*Id.*]. [] Inmate Bean then began calling Plaintiff a "snitch n[*****]"and walking through the pod while ranting and beating on tables [*Id.*].
>
> At this point, Plaintiff requested to speak to the night shift supervisor, Defendant Sgt. Owens [*Id.*]. Defendant Officer Tyler initially denied this request, but ultimately called Defendant Sgt. Owens to the pod after observing [Inmate] Bean's behavior [*Id.*].
>
> When Defendant Sgt. Owens came to the pod, Plaintiff explained [] Inmate Bean's behavior to both Defendant Officer Tyler and Defendant Sgt. [Owens] and requested help [*Id.* at 5–6]. Plaintiff specifically told Defendant Sgt. Owens that [] Inmate Bean was threatening him, had pretended Plaintiff's letter was toilet paper, and should not be allowed to treat Plaintiff in this manner, as they both knew that [] Inmate Bean was a white supremacist, and stated that as a pretrial detainee he should not be housed with a state inmate [*Id.* at 6]. Defendant Sgt. Owens responded "'[w]ell you know what kind of white people are in this jail,'" which Plaintiff asserts was a reference to the fact that white people in the Franklin County Jail are racist [*Id.* n.1].
>
> Plaintiff remained in the pod with [] Inmate Bean, who continued ranting and making racist and threatening statements to Plaintiff [*Id.*]. Plaintiff eventually began beating on the pod door, at which point [] Inmate Bean attacked him, beat his face "profusely," and rammed Plaintiff into the wall four or five times [*Id.*]. After the attack, [] Inmate Bean continued to threaten Plaintiff and Plaintiff's family and ran around the pod making racist statements, and no jail officials helped Plaintiff [*Id.*]. Moreover, despite Plaintiff asking Defendant Sgt. Owens if he could go to the infirmary "considering that he has had quadruple bypass surgery" after the attack when he was visibly bruised and bleeding, Plaintiff did not receive any medical treatment or medication for pain [*Id.* at 6, 14].

[Doc. 7 at 2–4].

In his complaint, Plaintiff supports his allegation that Inmate Bean is "affiliated with the 'Crazy White Boy Gang'" by citing a Tennessee Department of Correction ("TDOC") document for Inmate Bean that lists him as "SUSPECTED" of having connection with this security threat group [Doc. 1 at 6; Doc. 1-1 at 2]. But this document indicates that the picture of Inmate Bean

4

printed thereon was submitted on January 21, 2020, which is more than five months after Plaintiff's fight with Inmate Bean that is the subject of Plaintiff's complaint [Doc. 1 at 6; Doc. 1-1 at 2].

### III. DEFENDANTS' EVIDENCE

Defendants first rely on a sworn copy of the video surveillance of the altercation between Plaintiff and Inmate Bean to support their motion for summary judgment [Doc. 49; Doc. 50 at 2]. This video is dated August 9, 2019 and begins with Plaintiff, a black inmate, standing in the top left corner of the video frame[4] [*Id.* at 0–0:15]. At approximately 15 seconds into the video, Inmate Bean, a white inmate, takes a paper from Plaintiff and starts walking away [*Id.* at 0:15–17]. Plaintiff immediately follows Inmate Bean, and when Plaintiff catches up to him, Plaintiff appears to push and/or hit Inmate Bean from behind, at which point Plaintiff and Inmate Bean begin wrestling and fighting, and this altercation is visible on the screen for approximately 24 seconds [*Id.* at 0:18–0:42]. Then Plaintiff and Inmate Bean move to the top right corner of the video frame, where they are only partially visible but still appear to fight for at least thirty seconds, if not more [*Id.* at 42–1:12]. No jail officials are visible in the video footage of the pod at any time [*See generally id.*].

Defendants also rely on, among other things, the following documents to support their motion for summary judgment:

(1) An affidavit from Franklin County Jail Administrator Scotty McKay. In his affidavit, Mr. McKay swears that the documents attached thereto and the video of the fight between Plaintiff and Inmate Bean on August 9, 2019 are true and accurate [Doc. 50 at 1–4]. Mr. McKay also testifies, among other things, that there was no indication in Inmate Bean's Franklin County Jail file that he had any affiliation with a gang or white supremacist organization and that there was no indication that Inmate Bean was a danger to anyone prior to his altercation with Plaintiff [*Id.*];

(2) A copy of Inmate Bean's Franklin County Jail booking sheet listing his intake date

---

[4] The Court bases its identification of Plaintiff and Inmate Bean in this video on Franklin County Jail Administrator Scotty McKay's affidavit providing that the video shows the altercation between Plaintiff and Mr. Bean [Doc. 50 at 2], which Plaintiff has not disputed, and the allegations of Plaintiff's complaint [Doc. 1 at 5–6].

5

as February 11, 2019, and his gang affiliation as "NONE" [Doc. 50-2 at 1];

(3) An affidavit from Defendant Sheriff Fuller providing in relevant part that (1) he had no involvement in the decision to place Plaintiff in the same cell as Inmate Bean; (2) "do[es] not have any knowledge that [Inmate] Bean is or was affiliated with a gang or white supremacist organization;" and (3) "had no knowledge of any facts or allegations that would have led [him] to believe that any assault was about to occur" [Doc. 51 at 1];

(4) An affidavit from Defendant Officer Milliken providing in relevant part that he (1) was not in the jail at the time of the altercation; (2) did not speak with Plaintiff about any concerns Plaintiff had about being housed with Inmate Bean; (3) did not observe any signs that Plaintiff was at risk of having an altercation with Inmate Bean; and (4) "ha[s] no knowledge of [Inmate] Bean being involved in any gang or white supremacist organization" [Doc. 52 at 1–2]; and

(5) An affidavit from Defendant Sgt. Owens providing that (1) he has no knowledge of Inmate Bean being associated with any gangs or white supremacy groups; (2) he does not recall the fight occurring; (3) no one told him of Plaintiff's alleged injuries; (4) Plaintiff never asked him to go to the infirmary; (5) Plaintiff never appeared to be in any distress; (6) he did not witness any injury or bruising on Plaintiff; and (7) he did not refuse Plaintiff any medical treatment [Doc. 63-1].

## IV. ANALYSIS

### A. Failure to Protect Claims Against the Individual Defendants

Defendants Sheriff Fuller, Officer Milliken, and Sgt. Owens seek summary judgment in their favor on Plaintiff's failure to protect claims against them based on the doctrine of qualified immunity [Doc. 63 at 5–10]. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly established;" and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 115758 (6th Cir. 1996)). Once a defendant pleads qualified immunity,

6

Case 4:20-cv-00011-JRG-CHS  Document 66  Filed 01/03/22  Page 6 of 14  PageID #: 274

the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 563 U.S. 731, 741 (2009)). In determining whether the doctrine of qualified immunity may shield a defendant, the court must determine "each defendant's liability . . . individually based on his own actions." *Hart v. Hillsdale Cty*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

The individual Defendants have established that they are entitled to summary judgment for Plaintiff's failure to protect claims against them based on qualified immunity because the undisputed proof establishes that they did not violate Plaintiff's constitutional rights by failing to address a danger to Plaintiff of which they knew or should have known. It is well-settled that prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to an officer's failure to protect a pretrial detainee only where the inmate demonstrates that he was "incarcerated under [a] condition[] posing a substantial risk of serious harm," *id*. at 834, and the defendant deliberately and recklessly failed to address that condition even though he knew or should have known of it. *Brawner v. Scott Cty.*, 14 F.4th 585, 596–97 (6th Cir. 2021) (citations omitted).

The Court will address Plaintiff's failure to protect claim against each individual Defendant in turn.

### 1. Defendant Officer Milliken

As set forth above, Plaintiff claims in his complaint that, after Inmate Bean took Plaintiff's letter and wiped his behind with it, Plaintiff told Defendant Officer Milliken about this behavior and Defendant Officer Milliken laughed before he called Defendant Sgt. Owens to the pod [Doc. 1 at 5]. Plaintiff then told both Defendant Officer Milliken and Defendant Sgt. Owens that Inmate Bean was threatening him, had pretended Plaintiff's letter was toilet paper, and should not be able to treat Plaintiff that way, as they knew Inmate Bean was a white supremacist, but Plaintiff was then left in the pod with Inmate Bean, who made further racist and threatening comments to Plaintiff before attacking him [*Id.* at 5–6].

However, Defendants have set forth undisputed video proof that Plaintiff did not speak to Defendant Officer Milliken, or any officer, after Inmate Bean took the letter from him and before Plaintiff fought with Inmate Bean [Doc. 49 at 0–0:17]. Instead, as soon as Inmate Bean took the letter from Plaintiff, Plaintiff immediately went after him and initiated a physical confrontation with him [*Id.* at 0:15–0:17]. Accordingly, the Court does not have to consider Plaintiff's sworn allegations in his complaint regarding this claim for purposes of summary judgment. *Cunningham v. Shelby Cty.,* 994 F.3d 761, 763 (6th Cir. 2021). Instead, the Court accepts the undisputed video evidence, which shows that Plaintiff never made Defendant Officer Milliken, or any other officer, aware that Inmate Bean posed any threat to him after Inmate Bean took a letter from him and before his fight with Inmate Bean.

Moreover, while Plaintiff does not allege in his complaint that Defendant Officer Milliken had any role in housing Plaintiff with Inmate Bean, even if he had, the record establishes that Defendant Officer Milliken would be entitled to summary judgment on such a claim because this Defendant had no reason to know that housing Plaintiff and Inmate Bean in the same pod posed a threat to Plaintiff's safety. Specifically, as set forth above, while Plaintiff alleges in his complaint

that Inmate Bean "is a known white supremacist," it is apparent from his complaint that Plaintiff bases this assertion on a TDOC document that lists Inmate Bean as a suspected affiliate of the security threat group Crazy White Boys [Doc. 1 at 6; Doc. 1-1 at 2]. However, this document indicates that the picture of Inmate Bean thereon was submitted on January 21, 2020 [Doc. 1-1 at 2], which is more than five months after August 9, 2019, the date of Plaintiff's fight with Inmate Bean [Doc. 1 at 5; Doc. 49]. Thus, it is apparent that this TDOC document could not have existed until on or after January 21, 2020, and it therefore cannot support a finding that any Defendant had reason to know or suspect that Inmate Bean was a white supremacist on or before August 9, 2019. And Plaintiff provides no other support for his conclusory assertion that Inmate Bean is a known white supremacist, or that Inmate Bean was a known white supremacist at the time that Plaintiff was housed with him. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (providing that "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment" (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Also, Defendant Officer Milliken has set forth sworn proof that (1) Inmate Bean's relevant Franklin County Jail booking sheet listed his gang affiliation as "NONE" [Doc. 50 at 1–2; Doc. 50-2 at 2] and (2) he has no knowledge of Inmate Bean being involved in any gang or white supremacist organization and did not observe any signs that Plaintiff was at risk of having any altercation with Inmate Bean [Doc. 52 at 1–2]. And Plaintiff has failed to come forward with any evidence suggesting that Defendant Officer Milliken, or any other Defendant, had any reason to suspect Inmate Bean of being a white supremacist on or before Plaintiff's fight with Inmate Bean on August 9, 2019, in response to Defendant Officer Milliken's assertion that he is entitled to qualified immunity for Plaintiff's failure to protect claim.

Accordingly, Defendant Officer Milliken is entitled to summary judgment on Plaintiff's claim against him for failure to protect.

### 2. Defendant Sgt. Owens

Plaintiff's failure to protect claim against Defendant Sgt. Owens arises out of the same factual allegations as his failure to protect claim against Defendant Officer Milliken, which are set forth above. And like Defendant Officer Milliken, Defendant Officer Owens has set forth sworn proof that Plaintiff did not tell him that Inmate Bean posed a threat to Plaintiff after Inmate Bean took Plaintiff's letter and before the fight between Plaintiff and Inmate Bean, that Inmate Bean's relevant Franklin County Jail booking sheet listed his gang affiliation as "NONE," and that he has no knowledge that Inmate Bean was associated with any gang or white supremacy groups [Doc. 49; Doc. 50 at 1–2; Doc. 50-2 at 2; Doc. 63-1], which Plaintiff has not rebutted.

Accordingly, for the same reasons as Defendant Officer Milliken, Defendant Sgt. Owens is entitled to summary judgment for Plaintiff's claim against him for failure to protect.

### 3. Defendant Sheriff Fuller

As set forth above, Plaintiff's failure to protect claim against Defendant Sheriff Fuller arises out of his allegation that this Defendant chose to house him with Inmate Bean even though Inmate Bean "is a known white supremacist" [Doc. 1 at 9–10]. Again, however, while Plaintiff alleges in his complaint that Inmate Bean is known to be a white supremacist as of the date of him filing his complaint, the document Plaintiff cites to support this assertion could not have existed until more than five months after Plaintiff's fight with Inmate Bean underlying his failure to protect claims against all Defendants [Doc. 1-1 at 2]. And Defendant Fuller has set forth proof that Inmate Bean's booking sheet for his relevant incarceration in the Franklin County Jail listed his gang affiliation as "NONE" [Doc. 50 at 1–2; Doc. 50-2 at 2] and that he has no knowledge that Inmate

10

Bean was associated with any gang or white supremacy groups [Doc. 63-1[5]], which Plaintiff has not rebutted.

Accordingly, Defendant Sheriff Fuller is also entitled to summary judgment on Plaintiff's failure to protect claim.

### B. Failure to Protect Claim Against Franklin County

Plaintiff's next claim proceeding herein is that Defendant Franklin County failed to properly train its officers to handle conflicts between racially diverse inmates and known white supremacist inmates. However, as the Court has found no underlying violation of Plaintiff's constitutional rights that any such policy may have caused, Defendant Franklin County is entitled to summary judgment for this claim. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cty.*, 205 F.3d 867, 879 (6th Cir. 2000)) ("There can be no liability under *Monell* without an underlying constitutional violation").

### C. Denial of Medical Care Claim Against Defendant Sgt. Owens

Plaintiff's last claim arises out his allegation that, after his fight with Inmate Bean and while he was visibly bruised and bleeding, he asked Defendant Sgt. Owens if he could go to the infirmary "considering that he has had quadruple bypass surgery" but did not receive any medical treatment or medication for pain [*Id.* at 6, 14]. Defendant Sgt. Owens, however, testifies in his sworn affidavit that "[he] was never told about the fight or [Plaintiff]'s alleged injuries," that Plaintiff did not ask him to go to the infirmary after the fight with Inmate Bean, that Plaintiff did not ever appear to be in distress, that "[he] did not witness any injuries or bruising on [Plaintiff],"

---

[5] In his affidavit, Defendant Sheriff Fuller also testifies that he was not involved in the decision to house Plaintiff and Inmate Bean in the same cell [Doc. 51 at 1]. However, Plaintiff does not allege that he was housed in the same cell as Inmate Bean, and Defendant Sheriff Fuller does not state in his affidavit whether he was involved in the decision to house Plaintiff and Inmate Bean in the same pod, which appears to be what led to their encounter.

11

and that "[he] did not refuse [Plaintiff] any medical treatment" [Doc. 63-1]. Thus, the record contains conflicting evidence about this claim.

However, even accepting Plaintiff's allegations as true, they are not sufficient to allow a reasonable jury to find that Defendant Sgt. Owens violated his constitutional rights by not sending him to the infirmary. Specifically, for Plaintiff survive summary judgment on this claim, the record must contain evidence from which a reasonable jury could find (1) Plaintiff had an objectively serious medical need and (2) Defendant Sgt. Owens either intentionally ignored that serious medical need "or [] recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff], even though a reasonable official in [Defendant Sgt. Owens's] position would have known that the serious medical need posed an excessive risk to [Plaintiff]'s health or safety." *Brawner v. Scott Cty.*, 14 F.4th 585, 597 (6th Cir. 2021). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) a condition diagnosed by a physician. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).

Plaintiff's allegations that he was visibly bruised and bleeding and asked Defendant Sgt. Owens to go to the infirmary "considering that he has had quadruple bypass surgery"[6] but did not receive medical care are not sufficient to allow a reasonable jury to find that Defendant Sgt. Owens violated Plaintiff's constitutional rights. Specifically, Plaintiff does not allege that he told Defendant Sgt. Owens that he was having any heart issues after his fight with Inmate Bean or otherwise set forth facts from which a reasonable jury could find that a reasonable person in

---

[6] It is somewhat unclear from the complaint whether Plaintiff alleges that he told Defendant Sgt. Owens that he had had quadruple bypass surgery, or if Plaintiff only includes the fact that he had such surgery as background information in his complaint [Doc. 1 at 6]. But for purposes of summary judgment, the Court assumes that Plaintiff told Defendant Sgt. Owens that he had had quadruple bypass surgery.

12

Defendant Sgt. Owens's position would have known that the fact that Plaintiff previously had quadruple bypass surgery created an excessive risk of harm to Plaintiff's health or safety after his fight with Inmate Bean.[7] Plaintiff likewise sets forth no facts about the nature of his bleeding or bruising from which a reasonable jury could find that a layperson would have known that this bleeding and bruising required medical care, or that a reasonable person in Defendant Sgt. Owens's position would have known that these conditions posed an excessive risk of harm to Plaintiff. *Meyers v. City of Chardon*, No. 1:14 CV 2340, 2015 WL 1648992, at *10 (N.D. Ohio Apr. 13, 2015) (noting that "injuries such as bruises, cuts and abrasions which are treatable at home and with over-the-counter bandages or medications are not sufficiently serious to invoke the protection of the constitution" (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d at 896–98)). And Plaintiff has not come forward with any evidence suggesting that Defendant Sgt. Owens was or should have been aware of an excessive risk of harm to him based on his appearance or his statements to this Defendant after the fight in response to Defendants' motion for summary judgment. Accordingly, Defendant Sgt. Owens is entitled to summary judgment for this claim.

## V. CONCLUSION

For the reasons set forth above, the Clerk is **DIRECTED** to update Defendant Tyler Milliken's name on the Court's docket sheet, Defendant Parsons will be **DISMISSED**, Defendants' motion for summary judgment [Doc. 63] will be **GRANTED**, Defendants' motion for an extension of time to file a motion for summary judgment [Doc. 62] will be **DENIED as moot**, and this action will be **DISMISSED with prejudice**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a

---

[7] While Defendants have filed a document indicating that Plaintiff told an Officer Vann that he needed his blood pressure checked after the fight and that Officer Vann noted that Plaintiff was "very hot and needed air" [Doc. 50-3 at 1], and Plaintiff alleges in his complaint that he also "passed out twice" after the fight [Doc. 1 at 7, 14], the Court has not located anything in the complaint or otherwise in the record that suggests that Defendant Sgt. Owens was aware or should have been aware of these occurrences or Plaintiff's condition at the time of these occurrences.

notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

    **AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

    ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
